## A00A1084. WATTS v. THE STATE.
### (541 SE2d 41)

RUFFIN, Judge.

Zane Phillip Watts was convicted of rape and incest. On appeal, he challenges the sufficiency of the evidence and also contends that the trial court erred in denying his motions to suppress, permitting hearsay testimony, and giving an erroneous charge. For reasons discussed below, we affirm.

1. Count 1 of the indictment charged Watts with forcibly raping K. T., his girlfriend's daughter, between September 1, 1996, and November 23, 1997. Watts contends that the trial court erred in denying his motion for directed verdict on this count, arguing that the State presented no evidence that force was involved. This contention is without merit.

A motion for a directed verdict should be granted "only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law."[1] On appeal, we consider all the evidence in the case and view the evidence in the light most favorable to the verdict.[2]

---

[1] *Black v. State*, 242 Ga. App. 271-272 (1) (529 SE2d 410) (2000).

[2] Id. at 272.

K. T. testified that in September 1996, when she was 11 years old, Watts came into her bedroom, pulled down her pants, and stuck his penis in her vagina. She said that, "[w]hen I started screaming he told me to stop." She testified that Watts repeatedly molested her on numerous occasions afterward. On November 23, 1997, while at K. T.'s grandfather's house, Watts told her they needed to look for light bulbs in a toolshed. When they got inside the shed, Watts told K. T. that "[w]e're gonna do something first." K. T. tried to walk out of the shed, but the doors were closed. K. T. testified that Watts then pushed her down, pulled down both of their pants, placed a condom on his penis, and placed his penis in her vagina. She testified that "I told him I had a tampon in so he couldn't put it in me, but he did anyway."

Watts concedes in his appellate brief that K. T. testified that the September incident involved the use of force. However, he argues that this testimony was not credible because it was inconsistent with her prior accounts of the incident. He claims that it was therefore "unlikely" that the jury convicted him based on the September incident, and that there was no evidence of the use of force in the November 1997 incident. In considering the denial of a motion for directed verdict, however, we consider only whether the evidence, viewed in the light most favorable to the verdict, demanded a verdict of acquittal. Because the credibility of witnesses is a matter for the jury,[3] the jury could have believed K. T.'s testimony that the September incident involved the use of force. Accordingly, regardless of whether the November incident involved force, the evidence did not demand a verdict of acquittal, and the trial court did not err in denying Watts' motion for directed verdict.[4]

2. The trial court instructed the jury that

a person commits rape when he has carnal knowledge of a female forcibly and against her will. . . . You may find that the element of force is present if the victim's lack of resistance was induced by fear. Lack of resistance induced by fear is not consent but constitutes force.

Watts argues that this charge blurs the distinction between the issues of force and consent, suggesting that the element of force is satisfied by proof of lack of consent. We do not agree. The court

[3] See *Jackson v. State*, 236 Ga. App. 260, 261 (511 SE2d 615) (1999) ("Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve") (punctuation omitted).

[4] Watts does not contend that the indictment was defective for failing to specify with greater precision the date of the offense.

clearly charged the jury that the defendant's actions must be both forcible and against the victim's will. The instruction that a lack of resistance induced by fear does not constitute consent, but does constitute force, is a correct statement of law.[5]

3. Watts contends that the trial court erred in allowing testimony from two witnesses concerning statements made by K. T., arguing that there were not "sufficient indicia of reliability" to support admission under the Child Hearsay Statute, OCGA § 24-3-16. We disagree.

(a) Cindy Merritt, a neighbor of K. T.'s, testified that she spoke with K. T. on November 23, 1997, and that K. T. told her Watts had been molesting her. Watts contends that this statement was inadmissible under the Child Hearsay Statute because there were insufficient indicia of reliability. However, he did not raise this specific objection at trial, but simply stated that he "would object to hearsay statements." After the prosecutor responded that the testimony was being offered under the Child Hearsay Statute, the trial court overruled the objection, and Watts never asserted that there were insufficient indicia of reliability. Accordingly, he has failed to preserve this issue for appeal.[6]

After giving this testimony, Merritt said that K. T. gave her further information in "bits and pieces" over the following three days. Watts' attorney then objected that statements made over the three-day period would not exhibit sufficient spontaneity to be admissible under the Child Hearsay Statute. The trial court overruled this objection. Immediately thereafter, the prosecutor asked Merritt about K. T.'s mother's appearance on November 23, and Merritt testified that she was "very distraught." The prosecutor then asked about K. T.'s statements, and Merritt testified that K. T. "said that she had taken her mother to a condom that [Watts] had thrown out the window of the vehicle that they were returning home in, and that she had remembered the place where he had thrown it out and had taken her mother back to the scene."

On appeal, Watts asserts that the "statements that were received over a period of time in late November of 1997" were

---

[5] See *Curtis v. State*, 236 Ga. 362, 363 (1) (223 SE2d 721) (1976) ("lack of resistance, induced by fear, is not legally cognizable consent but is force"); *Long v. State*, 241 Ga. App. 370, 371 (2) (526 SE2d 875) (1999) ("Lack of resistance, induced by fear, is not legally cognizable consent but is force").

[6] See *Ramsey v. State*, 214 Ga. App. 743, 744 (1) (448 SE2d 790) (1994); *Patterson v. State*, 237 Ga. App. 80 (1) (514 SE2d 873) (1999). See also *Horan v. Pirkle*, 197 Ga. App. 151-152 (1) (397 SE2d 734) (1990) (mere "hearsay" objection insufficient to preserve claim that statement was inadmissible under OCGA § 24-3-8, where, after trial court indicated that statement was admissible as declaration against interest, counsel failed to raise specific grounds that statement did not qualify as declaration against interest).

inadmissible under the Child Hearsay Statute due to a lack of spontaneity, although he does not cite the record to specify exactly which statements to which he is referring. Assuming that Watts is referring to the above testimony, it is not clear that he preserved his objection for appeal. At the time Watts made his objection, Merritt had not described the statements made by K. T., so there was no way of judging whether such statements would be objectionable. When Merritt described the statements several questions later, Watts did not raise any objection.[7]

Even assuming that Watts' objection was sufficient to preserve the issue for appeal, the statement was not inadmissible for the reasons stated in the objection. The Child Hearsay Statute applies only to a statement by a child "describing any act of sexual contact or physical abuse."[8] The statement at issue did not describe an act of sexual contact or physical abuse, but described K. T.'s own actions in retrieving the condom that Watts threw from his vehicle. Regardless of whether such statement would be inadmissible for any other reason, it was not inadmissible for the reason asserted by Watts.[9]

(b) Watts also contends that the trial court erred in allowing testimony from another witness, Amanda Hunter. The prosecutor asked Hunter if she remembered K. T. "ever telling you anything about [Watts] touching her in ways that he shouldn't?" When Hunter began to describe what K. T. had said, Watts' attorney objected on the grounds that "we don't have any idea when this occurred, so we have no way of judging whether it happened before the alleged incident or after, and that deals with the issue of the reliability of it." The prosecutor stated that he would "lay some more foundation," and asked Hunter when K. T. made the statements. Hunter stated that she believed K. T. made the statements before Hunter's birthday on November 7. The prosecutor then asked what K. T. had told her, and Hunter said that "[s]he said [Watts] was . . . forcing her to have sex with him." Watts did not raise any objection to this testimony.

"It is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver."[10] By failing to obtain a ruling on his objection, or to renew his objection after the prosecutor elicited further testimony in response to the objection, Watts waived this issue for appellate

---

[7] See *Martinez v. State*, 241 Ga. App. 863 (1) (528 SE2d 294) (2000) ("anticipatory" objection does not suffice to preserve issue).

[8] OCGA § 24-3-16.

[9] See *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395) (1990) (objection on specific ground waives any objection on other grounds).

[10] (Punctuation omitted.) *Harris v. State*, 190 Ga. App. 343, 348 (4) (b) (378 SE2d 912) (1989).

review.[11]

4. Prior to trial, Watts filed a motion to suppress certain videotapes found during a search of his residence, asserting that the warrantless search "was conducted without any consent on the part of the Defendant." The trial court considered this motion just before the start of trial. Defense counsel stated that the police had obtained consent for the search from Anita Tetterton, who the State contended was Watts' common-law wife. The prosecutor stated that Watts and Tetterton had lived together for a number of years and shared a common bedroom. Defense counsel did not contradict this representation of the facts. During the trial, Tetterton confirmed that she lived with Watts from 1988 to 1997, and the investigating officer testified that Tetterton gave him permission to search the residence.

On appeal, Watts does not contest Tetterton's authority to give consent, but asserts that the trial court erred in denying the motion to suppress because the State introduced no evidence at the suppression hearing. This contention is without merit. First, Watts' own attorney represented at the hearing that Tetterton gave consent to the search, and did not object when the prosecutor represented that Tetterton had lived in the house with Watts for several years as his common-law wife. In the absence of an objection, statements by counsel serve the same function as evidence.[12] Furthermore, in considering the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.[13] As discussed above, the trial testimony showed that Tetterton did in fact live with Watts in the residence and gave consent for the search.

5. Before trial, blood and hair samples were obtained from Watts pursuant to a warrant. Watts filed a motion to suppress, asserting that the affidavit used to obtain the warrant "contains material omissions that undermine the validity of the warrant." The motion did not, however, specify what material facts were omitted, nor did it allege that the facts were omitted in order to mislead the magistrate. At the motion to suppress hearing, Watts' attorney asserted that the affidavit failed to state that (1) an examination of the victim showed "no evidence of rape or intercourse," and (2) the victim had made prior false accusations against Watts. He contended that, if the affidavit had contained such facts, the magistrate "might not have issued the warrant." The trial court denied the motion to suppress.

On appeal, Watts contends that the trial court erred in denying

---

[11] See *Morris v. State*, 212 Ga. App. 42, 43-44 (2) (441 SE2d 273) (1994) (defendant failed to renew objection to expert's qualifications after further foundation laid); *Ford Motor Co. v. Tippins*, 225 Ga. App. 128, 129-130 (1) (483 SE2d 121) (1997).

[12] *Burgess v. State*, 207 Ga. App. 286 (427 SE2d 614) (1993).

[13] *Jackson v. State*, 230 Ga. App. 292, 296 (6) (496 SE2d 315) (1998).

the motion because the State presented no evidence at the suppression hearing. However, it is well settled that, where a defendant challenges a warrant based on the alleged omission of material information, the defendant bears "the burden of showing not only that the false and omitted information was material to the determination of probable cause, but that any false information given or material information omitted was done so for the purpose of misleading the magistrate."[14] In order to force an evidentiary hearing on the accuracy of the affidavit, a defendant must

> present more than mere conclusions. There must be allegations of deliberate falsehood or reckless disregard for the truth, and these allegations must be accompanied by evidence or an offer of proof of such evidence. Mere allegations of negligence or mistake of fact are not sufficient.[15]

In this case, Watts did not even *allege* that any facts were intentionally omitted for the purpose of misleading the magistrate, much less present evidence or an offer of proof on this issue. Accordingly, he failed to satisfy his burden of proof, and the trial court thus did not err in denying the motion to suppress.[16]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 13, 2000 — 

*King & King, David H. Jones*, for appellant.
*Peter J. Skandalakis, District Attorney, Kevin W. Drummond, Assistant District Attorney*, for appellee.

---

[14] *Houston v. State*, 242 Ga. App. 114, 115-116 (1) (527 SE2d 619) (2000). See also *Bickley v. State*, 227 Ga. App. 413, 414 (1) (a) (489 SE2d 167) (1997).

[15] (Citations and punctuation omitted.) *Ferrell v. State*, 198 Ga. App. 270-271 (1) (401 SE2d 301) (1991).

[16] See id.; *Houston*, supra; *Bickley*, supra. Contrary to Watts' contention, the fact that the affidavit was not introduced into evidence at the suppression hearing is immaterial, since Watts did not contend that the facts contained in the affidavit were insufficient to support the issuance of a warrant. Compare *Liskey v. State*, 156 Ga. App. 45-46 (1) (274 SE2d 89) (1980); *Bartlett v. State*, 165 Ga. App. 18-19 (1) (299 SE2d 68) (1983).