## A02A0431. MILBY v. THE STATE.
(569 SE2d 256)

BARNES, Judge.

Alan Milby was charged with possession of cocaine in violation of the Georgia Controlled Substances Act. He moved to suppress evidence of crack cocaine found during a pat-down conducted after the traffic stop of a truck in which Milby was a passenger, contending that the police officer had no articulable suspicion for the search. The trial court denied the motion and granted Milby's request for a certificate of immediate review. We granted Milby's application for interlocutory appeal and now reverse the trial court's ruling.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

At the motion to suppress hearing, Officer Hitchcock, a policeman with the City of Carrollton Police Department, testified that on

September 10, 2000, he was working the night shift in the patrol division when he made a traffic stop of a blue truck driven by Judy Milby for failure to maintain lane.[1] The defendant, Alan Milby (hereafter Milby), was the sole passenger in the truck. After the driver consented to a search of the vehicle, Milby was instructed to exit the vehicle, told to place his hands on the truck, and subjected to a patdown to which he did not consent. The officer patted him down and felt what appeared to be a rock of crack cocaine in the left pocket of Milby's shirt. He placed Milby in handcuffs and retrieved the suspected crack cocaine from Milby's shirt pocket after which Milby was arrested for possession of cocaine. During this time, a backup officer was present on the scene behind Officer Hitchcock.

The officer testified that he had asked for consent to search the truck because he saw the truck drive away from a high drug area, and Milby and the driver lied about coming from that location and appeared to be nervous and shaking. He also testified that he searched Milby because he was looking for "weapons that might be used offensive[ly] against me and anybody else at the scene." And when asked about the practice of searching the passenger in a vehicle, the officer stated that he does so routinely, "when I ask for consent to search, if [the passenger is] going to be standing outside the vehicle behind me when I'm searching. It's a common practice."

> A reasonable search for weapons for the protection of the police officer is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).

(Citations and punctuation omitted.) *Mashburn v. State*, 186 Ga. App. 488, 489 (367 SE2d 881) (1988).

A *Terry* pat-down involves a two-step process. "The officer must pat down first and then intrude beneath the surface only if he comes upon something which feels like a weapon." *State v. Newton*, 227 Ga. App. 394, 395 (1) (489 SE2d 147) (1997).

But, "[i]mplicit in this rule of law . . . is the prerequisite determination that the officer actually concluded that the suspect was

---

[1] Milby does not contend that the initial stop of the car was improper; therefore, we do not consider this issue.

armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances." (Citation omitted.) *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002). We have held that such a practice was reasonable when the defendant was a passenger in a car that was reported stolen (see *Dowdy v. State*, 209 Ga. App. 311 (433 SE2d 293) (1993)), when the passenger exhibits aggressive behavior toward the officer (see *Sikes v. State*, 247 Ga. App. 855 (545 SE2d 73) (2001)), and where drug use is admitted and one of the car's occupants is known to be involved in the drug trade. See *State v. Cannon*, 253 Ga. App. 445 (559 SE2d 76) (2002).

In this case, no evidence suggested that Milby's conduct gave the officer any reason to believe that he posed any physical hazard. In fact, during his testimony, the officer never articulated any cogent basis for his suspicion that Milby presented a threat to his safety. Although the officer explained patting down Milby's shirt pocket by saying that some people wear small guns around their neck, he never said he had any reason to believe that Milby was doing so. Instead, he explained that when he stops a vehicle, he always searches the occupants. A general practice of routinely patting down anyone who exits a car does not provide a reasonable basis for concluding that the subject is a threat to the officer's safety. See *Edgell*, 253 Ga. App. at 778.

> An individual's rights under the Fourth Amendment are not automatically waived, however, simply because he or she is asked to step out of a vehicle. The safety of officers is of extreme importance to this Court. Nonetheless, our constitution requires an officer to provide evidence to show that an act alleged to be performed for his safety was actually performed for that purpose in conformance with the requisite standards of *Terry*. Without appropriate evidence that the "officer . . . had a reasonable basis for concluding that (the suspect subject to the search) was armed or was otherwise a threat to his personal safety," *Newton*, supra, the intrusive search of the type in this case is unconstitutional.

Id.

While police officers "need not disregard the passenger . . . given the number of cases in which police officers are attacked, sometimes fatally, by passengers in vehicles" (*Dowdy*, 209 Ga. App. at 312), they must be able to articulate a reasonable basis for conducting a pat-down search. Because the State failed to do so in this case, it has not met its burden of establishing that the search of

Milby was lawful. See *State v. Banks*, 223 Ga. App. 838 (479 SE2d 168) (1996).

Our decisions in *Buffington v. State*, 229 Ga. App. 450 (494 SE2d 272) (1997), and *Harris v. State*, 239 Ga. App. 537 (521 SE2d 462) (1999), do not require a different outcome. *Buffington* involved the search and seizure of the driver of a vehicle who was stopped when he was observed committing a traffic violation, who had, according to the officer's testimony, left a building where a drug buy had previously taken place, and who was "nervous and fidgety." *Buffington*, 229 Ga. App. at 450. In *Harris*, which also involved the search and seizure of the vehicle's driver, the propriety of the protective weapons search was not challenged; Harris argued instead that the officer was not authorized to seize a "powdery substance" that was obviously not a weapon. *Harris*, 239 Ga. App. at 539.

Accordingly, as the trial court erred in denying Milby's motion to suppress, the judgment of the trial court must be reversed.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JULY 9, 2002.

*Allen M. Trapp, Jr.*, for appellant.

*Peter J. Skandalakis, District Attorney, Tara M. Wilson, Assistant District Attorney*, for appellee.